Pernell v. Andrade, I guess. Robert Pernell v. Andrade, I guess. Okay, Mr. Bell. Good morning, Your Honors. Good morning. May it please the Court. I'm Daniel Bell on behalf of the members of the Florida Legislature who have been subpoenaed in this case. In the order on appeal, the District Court erred in two critical respects. First, the District Court misapprehended the scope of the member's legislative privilege. Second, the District Court concluded in the alternative that the privilege was qualified, not absolute. On the first issue, under this Court's decision in Hubbard, none of the documents at issue could have been outside the scope of the privilege. As the Court explained, legislators are immune from inquiry into legislative acts in the legislative motive for them, and just as in Hubbard, the sole purpose of the subpoenas here was to explore legislative motive in passing the challenge law. Because that purpose was coextensive with the scope of the privilege, the subpoenas must be quashed in their entirety. Turning to the second issue, this Court already held in Hubbard that the legislative privilege extends to subpoenas in Section 1983 cases. The remaining question under Hubbard is whether the privileges absolute or qualified in that context. Yeah. The Supreme Court's decision in Gillick apparently thought that it extended to 1983 cases as well, didn't it? I think that's exactly correct, Your Honor. That's certainly how we read Gillick. I think the privilege is absolute in the context of Section 1983 subpoenas for exactly That's an exception for some criminal cases, right? Sure. And certainly the Supreme Court's own post-Gillick Section 1983 cases confirm that, saying that with an exception for criminal cases, the immunity and privilege enjoyed by members of state legislatures is parallel to that of members of Congress under the Feature Debate Clause. Counsel, what was the Supreme Court then referring to in Arlington Heights? I believe they referred to it as extraordinary circumstances, possibly in a civil case. Sure, Your Honor. I'm happy to refer. Possibly, but they said it'd be highly unlikely or unlikely, whatever they said. What would they be referring, what would be possible? So, Your Honor, we read that statement as a warning to plaintiffs not to get their hopes up about evidence of legislative motive in these cases because it'll probably be privileged. It might not be, for example, in an extraordinary case where a member waives the privilege and That reading, I think, is supported by the Court's citation to Tenney, which itself is an absolute immunity case. I'd also point out that Arlington Heights itself was about local board members, and at that time, in 1977, when Arlington Heights was decided, it was unknown whether absolute legislative immunity from Tenney applied to local officials. The information that this judge ordered to be produced, is it available generally through public means? Overwhelmingly, we think most of this evidence would be available publicly. We're talking about committee reports and things like that. So, the committee reports for the different committees on the legislature, that would not be privileged? So, we think that the subpoenas must be quashed insofar as they purport to require legislators to produce it. Exactly, Your Honor. There are committees they could produce. So, I think the committees could also assert the privilege if they were subpoenaed, but the point is that committee reports and things like that generally are going to be available in the legislature. Publicly available and are documents about which courts could take judicial notice? That's correct, Your Honor. That would generally be true of most of these documents. To be sure... It's like any kind of legislative history. I mean, like federal legislative history. To the extent that it exists at a state level, too, courts can read it and take judicial notice of it, right? That's correct. That's exactly correct. And I think this court came very close in Hubbard to recognizing that this privilege is absolute for legislators when it said that discovery requests can be just as intrusive as being named a defendant. Four other circuits have now agreed, and we think practice certainly confirms that subpoenas can be incredibly burdensome. This case is no exception. Just to put a point on it, here, although the district court purported to narrow the subpoenas in a number of ways, narrowing them, for example, to factual documents, the search terms still require the search process to look for 70 terms, including broad phrases like civil rights, across the documents on personal and government devices for 14 members of the legislature, requiring the review to find potentially tens of thousands of files. And we think for those reasons, the privilege is no less absolute here than it is in the immunity from suit context. So aside from Arlington Heights, in Greater Birmingham Ministries, for example, we said that for a successful equal protection claim, the plaintiffs have to prove an intent to discriminate. So if your argument is correct, what sources would be available to prove such intent? So as Chief Judge Breyer indicated, I think generally speaking, we'd look to things like legislative history, much of which will be publicly available. The primary source, of course, would be the text of the legislation itself. But any of those factors named in Arlington Heights and Greater Birmingham Ministries would continue to be available from any source other than legislators themselves. Here, we're simply talking about- You could have floor statements and debates, right? To the extent that those are produced by the legislature and are publicly accessible, a court can read those and take judicial notice of those, like anyone, right? That's exactly right, Your Honor. What we're not talking about here, Judge Breyer, is a kind of use immunity. So we're not talking about a bar to using evidence of legislative action in Arlington Heights case. It's about- If a legislator spoke out at a press conference or at a television interview, all of those kinds of public statements would be admissible evidence, wouldn't they? That's exactly right. And just to be clear, we're only talking about one source of evidence being barred here. And Tenney itself was far more intrusive in Section 1983 cases by barring claims entirely. So the D.C. Circuit cases concern the speech and debate clause, which, of course, implicates separation of powers issues. Is it your argument that the intrusiveness prong that you mentioned, that that's what takes the privilege into the realm of state legislatures or TORs or- That's essentially correct, Your Honor, although I would note that this is essentially a separation of powers common law rationale. What Gillick does is it draws a distinction between the separation of powers in the sense of the supremacy clause, which is uniquely an issue in cases involving congressmen. And on the other hand, we have the common law separation of powers concern, which is at full force here. And that's why Gillick says the absolute immunity cases draw the line at civil cases. But that's not what the D.C. Circuit cases were concerned with, right? That's true, Your Honor, although the Supreme Court has said on at least two occasions, I'm aware of, that with the exception for criminal cases, the immunity of state Let me ask you a question just about what you're arguing here. So your argument clearly is that the privilege is absolute, but I don't see where you argue that, I mean, so you're saying the district court shouldn't have conducted a balancing test. That's correct, Your Honor. But if we were to disagree with you on the absolute nature of the privilege, you haven't attacked the court's application of the balancing test, have you? We have not advanced that argument, Your Honor. Do you know any authority for the balancing test other than district court opinion? The balancing test was borrowed from a line of cases concerning a very different privilege, Your Honor, involving the protection of confidentiality under the deliberative process privilege. It's never been adopted by our court. Is that right? That's correct. Or by any federal court of appeals, for that matter. Okay. I'm happy to. Well, Mr. Bell, I think we understand your argument. Let's hear from Mr. Edwards. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Jerry Edwards on behalf of Plaintiff Appellees Leroy Purnell, et al. This Court should affirm the district court because it properly held that the legislative privilege is qualified and that the important federal interests in this case overcome the privilege as to only purely factual information here. Let's take it one at a time. Factual information first, okay? It looks to me like you've got a big problem with our Hubbard decision. In Hubbard, we didn't say that what's actually in the documents is what matters. We said that it's not a document-by-document approach. That here's what we said. There was no need for the lawmakers to peruse the subpoenaed documents to specifically designate and describe which documents were covered by the legislative privilege or to explain why the privilege applied to those documents. It was enough to point out, as the lawmakers did, that the only purpose of the subpoenas was to further the inquiry into the lawmakers' motivation for the law and that their legislative privileges exempted them from such inquiries. That seems precisely on point here. Your Honor, the Court need not reach the question of scope here because it can assume that purely factual information falls within the privilege and still uphold the district court because it properly applied precedent in ruling that the privilege is qualified and that it yields to the important facts. All right. Let's talk about the precedent for that. Yes, Your Honor. The precedent for that would be this Court's decision in Hubbard and would also be Supreme Court decisions Gillick and Arlington Heights. Gillick recognized an exception for criminal cases but made it pretty clear that that exception does not apply in Section 1983 cases. I disagree, Your Honor. And this Court's opinion in Hubbard shows why that is not correct. In Hubbard, this Court considered a Section 1983 case and the legislative privilege there. And it recognized that important Federal interests can overcome the privilege. So Hubbard was a 1983 claim, right? Yes. Hubbard was a 1983 claim. Correct. And the privilege applied, right? The privilege was upheld in that case because there was no important Federal interest, as this Court found after going through the important Federal interest analysis. Indeed, and I can quote this Court here. On pages 1313 to 1314, this Court said it, and it was speaking of the legitimacy of the First Amendment claim, bears directly on the question of whether there is a strong interest that would be impeded by applying the legislative privilege to block the subpoenas. And then it cited Gillick. And the Court said in explaining Gillick that a court must determine whether there is an important Federal interest at stake in deciding whether the legislative privilege should be applied. And so the district court understandably read Hubbard, applying Gillick to a Section 1983 case, and followed it, applying the important Federal interest standard. We didn't have a multi-factor balancing test that we employed like the district court, did we? No, Hubbard didn't need to reach that point in the analysis because it found that there was no legitimate interest because the claim— That has no real support in our precedence, does it? The balancing test has been used by courts across the country but not adopted in the Eleventh Circuit. And not by— As of yet. Has it been adopted by any court of appeals? No, not as of yet. But the important Federal interest— So no precedent supports it? For the balancing test, no, Your Honor. But the important Federal interest standard does have precedent, including this Court's decision in Hubbard. Has it ever been extended in a reported decision of either the Supreme Court or any court of appeals beyond the criminal context? Your Honor, courts have used it to evaluate Section 1983 claims as this Court has. It's a pretty simple question. A court has not upheld a subpoena as of yet, but numerous courts have used this important Federal interest standard to determine whether the claims in front of it would satisfy the standard and could overcome the privilege as the district court did here. And, Your Honor, just to go back to Gillick for a second to address your point about the line at civil cases, Gillick was not referring there to the privilege. It was discussing immunity and the immunity precedent from the court. Indeed, the court in Gillick only discussed immunity in two paragraphs in the entire opinion. And those were the two paragraphs where it was distinguishing the legislator's reliance on Tinney as arguing that his privilege was on par with Congress's. And what the court's point was is that even if this was an immunity case, you would not have immunity here. It then shifted back to the privilege, evidentiary privilege discussion for the final couple paragraphs, including the holding that comity, the interest that undergirds the legislative privilege as the court found in Gillick, yields to important Federal interests as in the enforcement of Federal criminal statutes. And so it did not draw the line at civil cases. Indeed, it could have, Your Honor. It could have simply left it there, said we're drawing the line at civil cases, but it went and applied this important Federal interest standard. And Arlington Heights confirms this reading, that the privilege is qualified under these sorts of circumstances. Counsel, what can Arlington Heights seem to indicate that there might be extraordinary circumstances exception in civil cases? What exactly would you contend would meet that definition? Yes, Your Honor. The reason the circumstances here are extraordinary is because we have a claim that turns on legislative intent properly under Arlington Heights, and that is undisputed. We have plaintiffs seeking to vindicate public rights here, not just their own personal private rights, but they are seeking to vindicate the rights of thousands of Floridians, as the district court found on page 533 of the appendix in talking about the important Federal interest in this case, which makes it akin to a criminal prosecution. And then the final aspect of this analysis is the district court concluding that the record justifies piercing the privilege in small, very narrow part. And that is rare. In many cases where courts have important Federal interests and a claim that turns on legislative intent, they still uphold the privilege because they say there's other evidence available from other sources, that it's not overly relevant as the First Circuit decided in American Trucking Association, or that the record before the court simply does not justify intruding upon the privilege there as the Ninth Circuit upheld a district court opinion in Levy City of L.A. on that ground. Yes. So on page 22 going through 23, you list a long string site, litany of decisions where you say Federal courts have held that the privilege can yield in similar circumstances. You know your argument there? And that list of cases? I'm sorry, Your Honor, I didn't catch you. Are you aware of what I'm talking about? Yes, I am aware. One of the cases you cite is Greater Birmingham Ministries. Now, there's two Greater Birmingham Ministries. One is decided by this court and one was in district court. Did you read the one you cited, which was the district court? I did, Your Honor, and we cited that in error. Who wrote that opinion? Yourself, Your Honor, and you upheld the privilege. She holds the opposite of what you cite for it, does it not? Yes, Your Honor. You ruled that on the circumstances before the court because other evidence was available to prove the Arlington Heights factors that you were upholding the privilege. Is there any difference between, significant difference between that issue, that decision, than the one we have before us today? Well, the difference is here, Your Honor, that that was within your discretion as a district court, and certainly you could come to that conclusion. The district court here came to the opposite conclusion and is being reviewed on abuse of discretion review, and there was not an abuse of discretion in its application of the important federal interest standard. It did not abuse its discretion in determining that the evidence was not reasonably available through other sources. And indeed, Your Honor, if you look to the Greater Birmingham Ministry's appellate decision, the court there faulted the plaintiffs for not being able to offer evidence that the legislators believed the law would have a discriminatory effect or impact. Well, can you not get the, could you not get the same information the district judge has ordered from public sources? Could someone not have been present? And I'm sure the public was, it was open to the public when they had committee arguments, committee discussions, when they had floor discussions and arguments and votes. Even if there wasn't an actual record kept that was public, was it not open to the public when the legislature was doing that? Your Honor, so there is other evidence available under Arlington Heights, but there are two specific factors here that this court talked about as important. And that's foreseeability of the disparate impact and knowledge of the disparate impact. And without being able to show the factual information before the legislators at the time they made their decision, it will be extraordinarily difficult to show those two factors. And this court, again, specifically referenced those factors in faulting the plaintiffs for not being able to show evidence that the legislators believed that the law would have a discriminatory impact or effect in greater Birmingham Ministries on page. Aren't you actually, by the two things that you're talking about, actually invading even more deeply than some type of public-held information? I apologize, Your Honor, I didn't catch that. I should lean up. Aren't you, the two factors you're just talking about, the getting into the legislators' mindset, what they knew at the time they made decisions, are you not going even further into this privileged information? In the purely public information the court seems to have allowed you to go into? The court has only allowed this purely factual information. It's not allowing us to get any information that reflects subjective motivations or the mental processes. But did you not just argue that the two factors, the two areas, and I remember one of them you just said was their intent and knowledge of the effect or whatever on, did I miss something? Yes, Your Honor. So this is circumstantial evidence. The Arlington Heights allows circumstantial evidence that could prove those things, and it's for the legislator as a whole. So being able to show the factual information that they considered could be crucial evidence. This is why you run straight into Hubbard. This is why you run straight into Hubbard, which said at its core and in entirety that what's going on here is an inquiry into the subjective motivation of the lawmakers. Where the privilege applied. Yes, Your Honor. You're admitting. That's what you're, you want this quote factual information to support a circumstantial case to go to the subjective motivation of the lawmakers. This is precisely what Hubbard said you don't get. Your Honor, what Hubbard said was that under the circumstances of the case, they weren't getting it because they couldn't satisfy the important federal interest standard. And just to circle back quickly to the point about information being publicly available, the district court did consider that, but made factual findings that the evidence was not reasonably available elsewhere. And the legislators haven't contested any of those findings. They've solely relied on the argument that the privilege is absolute in Section 1983 cases. And that very much conflicts with Hubbard's application of Gillick to the case. And moreover, Your Honor, the district court's findings were not in error. It found here that the important federal interest in this case was the vindication of constitutional rights that impact thousands of Floridians. What about that Los Angeles Lee case? Racial gerrymandering? It's less important than this? No, Your Honor. The difference between these two cases is the district court in the Ninth Circuit case found that the record before it did not justify intruding upon the privilege. And that was within its discretion. Whenever a district judge looks at it and says, I think this is really important. That's within the district judge's discretion. We can't, we can't, we can't second guess that. Is that right? Your Honor, under the abuse of discretion standard, if the district court applied the correct legal standard, which is the important federal interest standard. Yeah, creating a balancing test that our court's never employed, that will say, oh, it's within your discretion. You can do whatever you want. The privilege is eviscerated at this point. It's whatever the subjective determination of a district judge wants it to be. That's it. That's what you've done. You've eviscerated the privilege. No, Your Honor. Again, it's a very rare situation where the privilege is overcome. Courts usually uphold the privilege, as we saw in the Ninth Circuit. Maybe in some district courts. The overwhelming number usually uphold the privilege. Indeed, as Judge Kugler pointed out, he upheld the privilege when faced with this situation. And so, Your Honor, the issue here is whether the district court applied the proper legal standard. If it did, if it is a qualified privilege, if it does turn on the important federal interest standard, the district court made the findings a fact to find that there is a sufficiently important federal interest here. And again, the legislators have gone all in on the argument that there's an absolute privilege in Section 1983 cases that is not supported by precedent. Well, that it doesn't come within the only exceptions that have been recognized by any reported decision of either the Supreme Court or any court of appeals. Well, Your Honor, this Court can be the first. But the — again, the important federal interest standard is the standard this Court used in Hubbard. It's the standard the district court applied here. Even if this Court disagrees with the balancing test, the district court made the sufficient factual findings to show that these important federal interests overcome the legislative privilege to only purely factual information as it acknowledged the district court was denying plaintiffs the overwhelming majority of documents they sought. This is a very narrow, carefully crafted discovery order. The district court did not err. It did not abuse its discretion. And therefore, its decision should be affirmed. Thank you, Your Honor. Thank you, Mr. Edwards. Mr. Pell. Thank you, Your Honors. My friend on the other side had a lot to say about important federal interests. I'll simply note that the Supreme Court decided in Tenney 72 years ago that Congress did not express those interests clearly enough in Section 1983 to overcome the privilege as to State lawmakers. And we think that resolves this case. I'm happy to answer any other questions the Court may have. Were they dealing with privilege or immunity in that case? So they were dealing with what the Court described as privilege against judicial interference, which we would argue applies in full here because, as this Court has issued to legislators, is described what the Court held in Tenney as involving immunity, didn't it? That's correct, Your Honor. Yeah. That's correct. But Gillick was applying it in the privilege context, right? That's correct. Yeah. Thank you, Your Honors. Thank you. Federal Trade Commission versus HITECH. Thank you.